**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000077
30-MAY-2024
07:50 AM
Dkt. 109 SO**

NO. CAAP-18-0000077

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


LIMIT SKYLINE HONOLULU, Plaintiff-Appellant,
v.
PROSPECT PROPERTIES LLC; DIRECTOR OF
THE DEPARTMENT OF PLANNING & PERMITTING
OF THE CITY AND COUNTY OF HONOLULU,
Defendants-Appellees,
and
DOE DEFENDANTS 1-100, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-0047-01 DEO)


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and McCullen, JJ.)

This appeal involves a proposed condominium project in the lower Punchbowl area of Honolulu.  Plaintiff-Appellant Limit Skyline Honolulu (**Limit Skyline**) appeals from the January 8, 2018 Final Judgment (**Judgment**), entered in favor of Defendants-Appellees Prospect Properties LLC (**Prospect**) and the Director (**Director**) of the Department of Planning and Permitting of the City and County of Honolulu (**DPP**) (collectively, **Appellees**) by the Circuit Court of the First Circuit (**Circuit Court**).  Limit Skyline also challenges the following orders entered by the Circuit Court:  (1) the August 30, 2017 "Order Granting in Part [Prospect's] Motion for Summary Judgment on Counts I and II of the Complaint for Declaratory Relief, Filed August 9, 2016" (**Order Granting MSJ on Count I**); (2) the December 7, 2017 "Findings of Fact, Conclusions of Law, Decision and Order Denying

[Limit Skyline's] Motion for Summary Judgment on Count II of its Complaint for Declaratory, Injunctive and Other Relief and Granting Summary Judgment in Favor of [Appellees]" (**FOFs/COLs/Order Granting MSJ on Count II**); and (3) the December 7, 2017 "Findings of Fact, Conclusions of Law, Decision and Order Granting [Prospect's] Motion for Summary Judgment on Counts III and IV of [Limit Skyline's] Complaint Filed January 8, 2016" (**FOFs/COLs/Order Granting MSJ on Counts III and IV**).[1]

On appeal, Limit Skyline contends that the Circuit Court erred in: (1) concluding that the requirement for an environmental assessment (**EA**) under HRS § 343-5(a)(1) was not triggered by the Skyline Honolulu Project (the **Project**); (2) concluding that the requirement for an EA under HRS § 343-5(a)(4) was not triggered by the Project; (3) granting summary judgment in favor of Prospect on Count II of the Complaint; and (4) dismissing Counts II, III, and IV of the Complaint for failure to exhaust administrative remedies.[2] Limit Skyline also contends that the Director erred in several respects in approving a Punchbowl Special District (Major) Permit (**PSD Permit**) for the Project – contentions that appear to overlap with its points of error challenging the Circuit Court's summary judgment rulings.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Limit Skyline's contentions as follows.

### I. Discussion

**A. Summary Judgment on Count I**

In Count I of the Complaint, Limit Skyline alleged

---

[1] The Honorable Jeannette H. Castagnetti presided over this case from the filing of the complaint on January 8, 2016, to August 9, 2017, and entered the August 30, 2017 Order Granting MSJ on Count I.

The Honorable Dean E. Ochiai presided over this case beginning August 9, 2017, and entered the December 7, 2017 FOFs/COLs/Order Granting MSJ on Count II, the December 7, 2017 FOFs/COLs/Order Granting MSJ on Counts III and IV, and the January 8, 2018 Judgment.

[2] Limit Skyline's points of error have been restated and condensed for clarity.

that Prospect violated HRS § 343-5(a)[3/] and former Hawaiʻi Administrative Rules (**HAR**) § 11-200-6(b)(l)(D) by "failing to prepare an EA/[Environmental Impact Statement] for the . . . Project before applying for a [PSD] Permit." (Capitalization altered.) In the Order Granting MSJ on Count I, the Circuit Court concluded that "[HRS] Chapter 343 is not implicated" by the Project, *i.e.,* no EA was required, and thus summary judgment on Count I in favor of Prospect was appropriate.

Limit Skyline's first two points of error appear to challenge the Circuit Court's Order Granting MSJ on Count I. We address each point in turn.

### 1. Use of State or County Lands or Funds

Limit Skyline contends that the Circuit Court erred in concluding that an EA was not required under HRS § 343-5(a)(1), where the Project will replace 11 small residences with a 110-unit condominium complex and parking garage, and will therefore likely require the use of state or county lands or funds.

HRS § 343-5(a)(1) requires an EA for an action that proposes "the use of state or county lands or the use of state or county funds[.]" In construing the phrase "use of state or

---

[3/] HRS § 343-5(a) (2022) states, in pertinent part:

> **§ 343-5 Applicability and requirements**. (a) Except as otherwise provided, an environmental assessment shall be required for actions that:
>
> (1) Propose the use of state or county lands or the use of state or county funds, other than funds to be used for feasibility or planning studies for possible future programs or projects that the agency has not approved, adopted, or funded, or funds to be used for the acquisition of unimproved real property; provided that the agency shall consider environmental factors and available alternatives in its feasibility or planning studies; provided further that an environmental assessment for proposed uses under section 205-2(d)(11) or 205-4.5(a)(13) shall only be required pursuant to section 205-5(b);
>
> . . . .
>
> (4) Propose any use within any historic site as designated in the National Register or Hawaii Register, as provided for in the Historic Preservation Act of 1966, Public Law 89-665, or chapter 6E[.]

county lands," the supreme court has stated:

> [W]hether a proposed activity constitutes a "use of state or county lands" depends on the nature of the activity and the extent of the involvement of state or county lands. [Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawaiʻi 90, 103, 194 P.3d 531, 544 (2008)]. When the proposed activity utilizes state or county lands in a decidedly inconsequential or negligible manner, like the mere connection to state or county lands in Nuuanu Valley, or when the use is hypothetical, like the "potential use" of a public highway in Citizens[ for Prot. of N. Kohala Coastline v. Cty. of Hawaiʻi, 91 Hawaiʻi 94, 979 P.2d 1120 (1999)], then the activity does not rise to the level of "use" contemplated by [the Hawaiʻi Environmental Policy Act (**HEPA**)]. When, on the other hand, the proposed activity utilizes state or county lands in an actual and more substantial way, the activity qualifies as a "use" under HEPA. Compare Nuuanu Valley, 119 Hawaiʻi at 103–04, 194 P.3d at 544–45 (connecting to existing county lines was not a "use"), with Kahana Sunset Owners Ass'n v. Cty. of Maui, 86 Hawaiʻi 66, 71, 947 P.2d 378, 383 (1997) (installing a new drainage line beneath a public street that would be connected to an existing culvert beneath a public highway was a "use"), Citizens, 91 Hawaiʻi at 103, 979 P.2d at 1129 (constructing two underpasses beneath a state highway was a "use"), and Sierra Club v. Office of Planning, State of Haw., 109 Hawaiʻi 411, 415–16, 126 P.3d 1098, 1102–03 (2006) (constructing sewage and water transmission lines by tunneling beneath state highways was a "use").

Umberger v. Dep't of Land & Nat. Res., 140 Hawaiʻi 500, 522-23, 403 P.3d 277, 299-300 (2017).

In moving for summary judgment on Count I, Prospect produced evidence that the Project did not propose to use any state or county funds. Prospect's evidence included the Declaration of Thomas A. Schnell, the Project's lead planner, supported by multiple exhibits. Schnell declared, among other things:

> 5. The Project will connect privately-owned water lines, sewage lines and roadways to existing county infrastructure. The City and County of Honolulu has determined that there is sufficient capacity in the existing infrastructure in the sewer and water systems for the Project. The Project will not involve the upgrade of the City's sewer system or water main.
>
> 6. The Project does not involve (a) installation of new drainage systems on or under state or county lands; (b) construction of any roadways on or over state or county lands; or (c) construction of sewage lines or water lines across or under state or county lands.
>
> 7. The Project does not propose the use of state or county lands or funds.

In the Order Granting MSJ on Count I, the Circuit Court concluded in relevant part:

> Even assuming the factual assertions made in [Limit Skyline's] opposition were property [sic] attested to by a person with personal knowledge as required by Hawaiʻi Rules of Civil Procedure (**HRCP**) 56(e) and/or supported by exhibits properly authenticated, **the information provided by [Limit Skyline]**, when viewed in the light most favorable to [Limit Skyline], **do not establish a genuine issue of material fact for trial that the subject project proposes "the use of state or county lands or the use of state or county funds" as set forth in HRS [§] 343-5(a)(l)**. **[Limit Skyline's] claim of a use of state or county funds is speculative and is not based on any specific evidence or facts put forth by [Limit Skyline]**.

(Formatting altered; emphasis added).

On appeal, Limit Skyline does not point to any facts in the record supporting its argument that the Project will require the use of state or county lands or funds. Instead, Limit Skyline simply contrasts the existing "small old residences" with the Project's "~110 new residential units" and concludes that it is "highly likely" that state and county expenditures of funds will be needed. At the December 29, 2016 hearing on Prospect's motion, the Circuit Court questioned Limit Skyline on where it had presented any admissible evidence of the proposed use of state or county lands or funds so as to trigger an EA under HRS § 343-5(a)(1) or (4). Limit Skyline was unable to point to specific admissible evidence to support its allegations.

In sum, Limit Skyline failed to meet its burden of producing admissible evidence to create a genuine issue of material fact regarding whether the Project proposed the use of state or county lands or funds.[4] The Circuit Court did not err on this basis in the Order Granting MSJ on Count I.

**2. Use Within an Historic Site**

Limit Skyline contends that the Circuit Court erred in concluding that an EA was not required under HRS § 343-5(a)(4)

---

[4] Limit Skyline argues that none of the exemptions in the since-repealed and replaced HAR § 11-200-8(a) apply here. HAR § 11-200-8 was titled "Exempt Classes of Action" and provided various exemptions from the requirement for an EA once such a requirement was triggered. Because Limit Skyline failed to raise a genuine issue of material fact that would trigger an EA, an exemption from an EA requirement was not necessary.

because the Project is not "within the boundaries of the National Memorial Cemetery." Limit Skyline argues that the Memorial Cemetery in Punchbowl Crater is "within the area of potential effect and secondary impacts" of the Project.

HRS § 343-5(a)(4) requires an EA for an action that proposes "any use <u>within any historic site</u> as designated in the National Register or Hawaiʻi register, as provided for in the Historic Preservation Act of 1966, Public Law 89-665 or chapter 6E." (Emphasis added.) The plain language of the statute thus requires a use "within" a designated historic site.

There is no dispute that the Project was proposed to be located on the lower slopes of Puowaina, also known as Punchbowl Crater, and that both Punchbowl Crater and the National Memorial Cemetery (**Memorial Cemetery**) within the crater are listed on the National Register of Historic Places. However, in moving for summary judgment on Count I, Prospect produced evidence that the Project did not propose any use within these sites. Prospect's evidence included a February 29, 2016 letter from Dr. Susan A. Lebo, Archaeology Branch Chief of the Department of Land and Natural Resources' (**DLNR**) State Historic Preservation Division (**SHPD**), who stated that "the boundary of the historic property does not extend to the current [Project] area."

Addressing Limit Skyline's argument that the Project would potentially affect the Memorial Cemetery, the Circuit Court found and concluded that:

> Even assuming the factual assertions made in the opposition were property [sic] attested to by a person with personal knowledge as required by HRCP 56(e) and/or supported by exhibits properly authenticated, . . . when viewing the record evidence in the light most favorable to [Limit Skyline], **there is no evidence that the subject property falls within the boundaries of the [Memorial Cemetery] or proposes any use within said property. Thus the subject project does not propose "any use within any historic site designated in the National Register or Historic [sic] Register, as provided for in the Historic Preservation Act of 1966, Public Law 89-665, or chapter 6E" as set forth in HRS [§] 343-5(a)(4)**.

(Formatting altered; emphasis added).

Limit Skyline contends that the Circuit Court erred because the Project "is likely to" adversely affect the Memorial Cemetery due to the Project's "deep sub surface excavations into

6

Punchbowl's volcanic tuff slope that <u>may</u> destabilize the hillside beneath and immediately below the" cemetery site, therefore constituting a "reasonably foreseeable" use within the Memorial Cemetery. (Emphasis added.) Limit Skyline cites past incidents of rock slides on the outer slopes of Punchbowl Crater to support its assertion that the Project might impact the cemetery within the crater. However, the cited exhibits do not appear to show damage "within" the historic cemetery site. In any event, Limit Skyline did not present any evidence that the Project is within the boundary of the historic property.[5]

In sum, Limit Skyline failed to meet its burden of producing admissible evidence to create a genuine issue of material fact regarding whether the Project proposed any use within an historic site as set forth in HRS § 343-5(a)(4). The Circuit Court did not err on this basis in the Order Granting MSJ on Count I.

**B. Summary Judgment on Count II**

In Count II of the Complaint, Limit Skyline alleged that Prospect violated HRS Chapters 6E[6] and 343 by "failing to provide an assessment of the Project's impact on historic and cultural resources together with a complete archaeological inventory survey [(**AIS**)]." (Capitalization altered.) Count II also alleged that: "the [AIS] is incomplete"; Prospect "failed to provide SHPD with an opportunity to review the Project as

---

[5]     Limit Skyline also argues that the Project will impact view planes to and from Punchbowl Crater, but does not explain how this issue would trigger an EA under HRS § 343-5(a)(4) where the project is not within an historic site.

[6]     In particular, HRS § 6E-42 (Supp. 2023) provides, in pertinent part:

> **§ 6E-42 Review of proposed projects.** (a) Except as provided in section 6E-42.2, before any agency or officer of the State or its political subdivisions approves any project involving a permit, license, certificate, land use change, subdivision, or other entitlement for use, which may affect historic property, aviation artifacts, or a burial site, the agency or office shall advise the department and prior to any approval allow the department an opportunity for review and comment on the effect of the proposed project on historic properties, aviation artifacts, or burial sites, consistent with section 6E-43, including those listed in the Hawaii register of historic places.

required by HRS Chapter 6E prior to applying for a PSD permit"; Prospect "should be required, at a minimum, to prepare an EA as required by HRS § 343 prior to any approvals needed by the Project"; and "[SHPD] must also be given an opportunity to review the impact of the Project on all historic properties that may be impacted by the Project, which is not only part of the environmental assessment under HRS Chapter 343, but required by HRS Chapter 6E."

In the FOFs/COLs/Order Granting MSJ on Count II, the Circuit Court first reiterated that "HRS Chapter 343 is not implicated in this case[,]" and further concluded that there was no genuine issue of material fact that:

> 2.    [Limit Skyline] did not initiate, let alone exhaust, the administrative remedies available from the Board of Land and Natural Resources [(**BLNR**)] for the alleged violation of HRS Chapter 6E or the regulations adopted thereunder.
>
> 4. [sic]  HRS § 6E-42 only requires that SHPD be given an opportunity to review and comment, which in fact occurred in this case.
>
> 5. [sic]  Furthermore, although an AIS was never required by SHPD for this Project, preparation of an AIS was required by Defendant DPP, and an AIS was prepared for this Project and accepted by SHPD.
>
> 5.    With regard to the issuance of the PSD Permit, under the Revised Charter of Honolulu [(**Honolulu Charter**)] § 6-1516, [Limit Skyline] is required to appeal the decision of the Director of DPP to the [Zoning Board of Appeals (**ZBA**)].
>
> 6.    To the extent [Limit Skyline] is arguing that Defendant DPP should not have issued the PSD Permit without an accepted AIS, that argument was not presented to the ZBA nor the BLNR.

On appeal, Limit Skyline contends that the Circuit Court erred in granting summary judgment in favor of Prospect on Count II.  In its third point of error, Limit Skyline argues, among other things, that the "Director erroneously approved the PSD . . . Permit even though [Prospect] had not submitted a complete [AIS] of the Project's Impact on the PSD's Historic and Cultural Resources . . . ."  (Formatting altered.)   In its fourth point of error, Limit Skyline argues that the Circuit Court erroneously dismissed Count II, among other counts, for failure to exhaust administrative remedies.  We address each

point in turn.

### 1. HRS § 6E-42 and the AIS

In Kaleikini v. Yoshioka, 128 Hawaiʻi 53, 283 P.3d 60 (2012), the Hawaiʻi Supreme Court applied Hawaii's historic preservation law, HRS Chapter 6E, and its implementing rules to the review process for the rail project.  The court held:

> [T]he SHPD failed to comply with HRS chapter 6E and its implementing rules when it concurred in the rail project prior to the completion of the required [AIS] for the entire project.  The City similarly failed to comply with HRS chapter 6E and its implementing rules by granting a special management area permit for the rail project and by commencing construction prior to the completion of the historic preservation review process.

Id. at 57, 283 P.3d at 64 (emphasis added).

In Hall v. Dep't of Land & Nat. Res., 128 Hawaiʻi 455, 290 P.3d 525 (App. 2012), this court summarized the supreme court's reasoning in Kaleikini, as follows:

> [T]he rules applicable to Hawaiʻi's historic preservation law establish a sequential review process, under which the completion of an AIS, if required, must precede the SHPD's concurrence in a project.  [128 Hawaiʻi] at 68, 283 P.3d at 75.  HRS § 6E-42 . . . requires a review and comment process for "any project involving a permit, license, certificate, land use change, subdivision, or other entitlement for use, which *may* affect historic property . . . or a burial site[.]" (Emphasis added.)  The details of this process are governed by [HAR] Chapter 13-284.  Under this regulatory regime, prior to State government approval of any project involving a permit, the SHPD must be consulted "to determine if the area proposed for the project needs to undergo an inventory survey to determine if historic properties are present."  HAR § 13-284-5(b) (2003).

Id. at 457-58, 290 P.3d at 527-28.

When SHPD is so consulted, it may respond in one of three ways:

> (1) by determining that no historic properties are present; (2) by determining that an adequate survey exists and that historic properties are present, which allows the agency to proceed to the next step in the review process, i.e., evaluation of the significance of the historic properties; or (3) by concluding that an AIS needs to be done.

Id. at 458, 290 P.3d at 528 (quoting Kaleikini, 128 Hawaiʻi at 74, 283 P.3d at 81) (brackets and ellipsis omitted).

Here, the summary judgment record on Count II does not establish that SHPD made either of the first two determinations when it was initially consulted about the Project in 2007. Rather, SHPD determined that historic properties were present and requested proposed mitigation commitments by Prospect, including documentation of the potential affected properties. It appears that in 2013, Prospect began the permitting and review process. SHPD reviewed Prospect's PSD Permit Application and, by letter dated September 24, 2015, identified SHPD's "outstanding concerns," reiterated its determination that historic properties were present, and stated it "look[ed] forward to continuing to work with [DLNR and DPP] throughout the historic preservation review process"; it did not state that an adequate survey existed. On November 3, 2015, the Director issued his Findings of Fact, Conclusions of Law, and Decision and Order <u>approving</u> the PSD Permit, subject to certain conditions. Two months later, an AIS was completed and sent to SHPD on December 28, 2015. By letter dated February 29, 2016, almost five months after approval of the PSD Permit, SHPD accepted the AIS's determination of "no historic properties affected" and agreed that no further work was necessary.

The Director approved the PSD Permit before SHPD completed the sequential review process required under HRS § 6E-42 and its implementing rules. Based on <u>Kaleikini</u> and <u>Hall</u>, we conclude that the Circuit Court erred in granting summary judgment in favor of Appellees on the merits of Limit Skyline's HRS Chapter 6E claim in Count II.[7]

### 2. **Exhaustion of Administrative Remedies**

"Courts have developed two principal doctrines to enable the question of timing of requests for judicial intervention in the administrative process to be answered: (1) primary jurisdiction; and (2) exhaustion of administrative remedies." <u>Kellberg v. Yuen</u>, 131 Hawaiʻi 513, 527, 319 P.3d 432, 446 (2014) (quoting <u>Kona Old Hawaiian Trails Grp. v. Lyman</u>, 69

---

[7]    To the extent Count II is based on alleged violations of HRS Chapter 343, for the reasons previously discussed, the Circuit Court did not err in concluding that "HRS Chapter 343 is not implicated" by the Project.

Haw. 81, 92-93, 734 P.2d 161, 168 (1987) (<u>Kona Old</u>)). The exhaustion doctrine "provides that where a claim is cognizable in the first instance by an administrative agency alone, judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process." <u>Id.</u> (brackets and internal quotation marks omitted) (quoting <u>Kona Old</u>, 69 Haw. at 93, 734 P.2d at 169). "In order for the doctrine to apply, 'the statute, ordinance or regulation under which the agency exercises its power must establish clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties.'" <u>Id.</u> at 536, 319 P.3d at 455 (brackets, emphasis, and internal quotation marks omitted) (quoting <u>Pele Defense Fund v. Puna Geothermal Venture</u>, 9 Haw. App. 143, 151, 827 P.2d 1149, 1154 (App. 1992)). Since application of exhaustion requires that the claim be cognizable only before the agency, "the court must first determine whether the agency has exclusive original jurisdiction, in which case, the doctrine of exhaustion would apply. If not, and the court finds that it does possess jurisdiction over the matter, the court can then decide if it is appropriate to apply the doctrine of primary jurisdiction." <u>Pac. Lightnet, Inc. v. Time Warner Telecom, Inc.</u>, 131 Hawaiʻi 257, 269, 318 P.3d 97, 109 (2013) (further explaining the doctrine of primary jurisdiction).

Here, as to Count II, the Circuit Court ruled that Limit Skyline did not exhaust the administrative remedies "available from [BLNR] for the alleged violation of HRS Chapter 6E or the regulations adopted thereunder." The court further ruled that under Honolulu Charter § 6-1516, Limit Skyline was required to appeal the Director's decision approving the PDS Permit to the ZBA, but Limit Skyline did not present its argument that the permit should not have been issued without an accepted AIS to the ZBA or BLNR. Thus, the Circuit Court appears to have granted summary judgment in favor of Appellees on Count II on the grounds that Limit Skyline failed to exhaust the respective administrative remedies provided by both the ZBA and BLNR.

In reaching this decision, however, the Circuit Court did not determine that specific statutes, ordinances or regulations under which DPP or BLNR exercise their respective powers establish "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties" – here, Limit Skyline's challenge to the proposed issuance of the PSD Permit based on alleged violations of HRS Chapter 6E. Kellberg, 131 Hawaiʻi at 536, 319 P.3d at 455. Nor did the Circuit Court determine whether DPP or BLNR has exclusive original jurisdiction over specific Chapter 6E claims raised by Limit Skyline. See Pac. Lightnet, 131 Hawaiʻi at 269, 318 P.3d at 109. Rather, the Circuit Court concluded generally that "HRS §6E-10.5 sets forth a comprehensive enforcement regime for Chapter 6E, vested in the [BLNR] to investigate and penalize violation of Chapter 6E or the regulations adopted thereunder[,]" and that "[p]ursuant to [Honolulu Charter] section 6-1516, a challenge to the issuance of a PSD Permit must be appealed to the ZBA."

Appellees are no more specific in their Answering Brief. They point to no DPP rules for submitting, evaluating and resolving complaints by aggrieved parties regarding the proposed issuance of special district permits, and we have found none.[8/] Appellees note only that the "[C]ircuit [C]ourt pointed to [HRS] §6E-10.5," and argue that "Limit Skyline did not exhaust its administrative remedies with regard to whether there was a violation [of HRS Chapter 6E] because it never presented its claim to BLNR to investigate." However, HRS §6E-10.5 itself does not establish a process for presenting such claims to BLNR to investigate, evaluate, and resolve, and Appellees do not cite any applicable rules or regulations that do.

On this record, we cannot conclude that in the context of this case, statutes, ordinances or regulations under which DPP

---

[8/] We note that City and County of Honolulu Administrative Rules, Planning Department, Part 1—Rules of the Planning Commission (**Planning Commission Rules**) § 2-52(c) provides that "[p]ersons may petition the commission to intervene in all proceedings before the commission for special use permits, subject to the requirements of this subchapter." (Emphasis added.) The Planning Commission Rules do not appear to contain a similar provision regarding proceedings for special district permits.

or BLNR exercise their respective powers establish "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." Kellberg, 131 Hawaiʻi at 536, 319 P.3d at 455. Accordingly, the Circuit Court erred in granting summary judgment in favor of Appellees on Count II on the grounds that Limit Skyline failed to exhaust the respective administrative remedies provided by the ZBA and BLNR.

**C.  Summary Judgment on Count III**

In Count III of the Complaint, Limit Skyline alleged that Prospect violated HRS Chapters 342D and 343 by "failing to provide an assessment of the water quality impacts of the project, including whether it may cause significant runoff and erosion . . . ."  (Capitalization altered.)

In the FOFs/COLs/Order Granting MSJ Granting MSJ on Counts III and IV, the Circuit Court first reiterated that "HRS Chapter 343 is not implicated in this case[,]" and further concluded as to Count III that there was no genuine issue of material fact that:

> 2.    [Limit Skyline] does not have a private right of action to enforce HRS Chapter 342D, as enforcement is vested with the Director of Health.
>
> 3.    [Limit Skyline] did not initiate, let alone exhaust, the administrative remedies available from the Director of Health with regard to its allegations that Prospect violated HRS Chapter 342D.
>
> 4.    Furthermore, because no demolition or construction has occurred at the Project site, Defendant Prospect could not have discharged any pollutants into state waters in violation of HRS § 342D-50(a).
>
> 5.    The claim for violation of HRS Chapter Ch. 342 is also therefore premature.

In its reply brief, Limit Skyline states that it "has not appealed its HRS [Chapter] 342D stormwater runoff claim[.]" To the extent Count III is based on alleged violations of HRS Chapter 342D, it is therefore waived.  To the extent Count III is based on alleged violations of HRS Chapter 343, for the reasons previously discussed, the Circuit Court did not err in concluding that "HRS Chapter 343 is not implicated" by the Project.

**D.    Summary Judgment on Count IV**

In Count IV of the Complaint, Limit Skyline alleged a "denial of substantive due process" "under Article I, Sections 2 and 5, and Article XI[,] Section 9 of the Hawaiʻi State Constitution."  Count IV alleged, among other things, that: "[t]he Project is likely to negatively impact the human environment in terms of obstructing vistas and view planes in violation of HRS § 343"; the PSD Permit application "provides a scant and inadequate analysis on the impact of the Project on significant scenic features and view planes"; and "[t]he Project is also likely to negatively impact the human environment in terms of traffic safety in violation of HRS § 343." (Capitalization altered.)

In the FOFs/COLs/Order Granting MSJ on Counts III and IV, the Circuit Court first reiterated that "HRS Chapter 343 is not implicated in this case[,]" and further concluded as to Count IV that there was no genuine issue of material fact that:

> 6.    . . . [Limit Skyline] takes issue with aspects of the Project approved by the PSD Permit that are alleged to have an adverse impact on view planes and traffic.
>
> 7.    With regard to the issuance of the PSD Permit, under the Revised Charter of Honolulu § 6-1516, [Limit Skyline] is required to appeal the decision of the Director of DPP to the ZBA.
>
> 8.    [Limit Skyline] did not exhaust its administrative remedies with regard to its allegations that the Project approved by the PSD Permit is likely to negatively impact the human environment in terms of obstructing vistas and view planes and the Project is likely to negatively impact the human environment in terms of traffic safety.  Thus, this Court does not have subject matter jurisdiction over these challenges to the issuance of the PSD Permit.

(Record citation omitted.)

On appeal, Limit Skyline contends that the Circuit Court erred in dismissing Count IV for failure to exhaust administrative remedies.

We need not decide whether, as a general matter, Limit Skyline's constitutional claims are subject to the exhaustion of administrative remedies doctrine.  For the reasons previously discussed, we cannot conclude that in the context of this case, statutes, ordinances or regulations under which DPP exercises its

power establish "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." Accordingly, the Circuit Court erred in granting summary judgment in favor of Appellees on Limit Skyline's substantive due process claims brought under article I, sections 2 and 5, and article XI, section 9, pursuant to the exhaustion of administrative remedies doctrine.

**E.  Other Points of Error**

Given our rulings regarding Counts 1 through IV of the Complaint, we do not reach Limit Skyline's remaining points of error.

## II. Conclusion

For the reasons discussed above, we affirm the Circuit Court's:  (1) August 30, 2017 Order Granting MSJ on Count I; (2) December 7, 2017 FOFs/COLs/Order Granting MSJ on Count II, as to the HRS Chapter 343 claim in Count II; and (3) December 7, 2017 FOFs/COLs/Order Granting MSJ on Counts III and IV, as to Count III.  We vacate the Circuit Court's: (1) December 7, 2017 FOFs/COLs/Order Granting MSJ on Count II, as to the HRS Chapter 6E claim in Count II; (2) December 7, 2017 FOFs/COLs/Order Granting MSJ on Counts III and IV, as to Count IV; and (3) January 8, 2018 Final Judgment.  We remand the case to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, May 30, 2024.

On the briefs:

Linda M.B. Paul
for Plaintiff-Appellant.

Gregory W. Kugle,
Loren A. Seehase, and
Joanna C. Zeigler
(Damon Key Leong Kupchak
Hastert)
for Defendant-Appellee
Prospect Properties LLC

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

15

Brad T. Saito and
Duane W.H. Pang
Deputies Corporation Counsel,
City & County of Honolulu,
for Defendant-Appellee
City and County of Honolulu,
Director of the Department of
Planning and Permitting