**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000063**
**18-NOV-2025**
**08:02 AM**
**Dkt. 162 MO**

NO. CAAP-22-0000063

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

SIERRA CLUB, Plaintiff-Appellant,
v.
BOARD OF LAND AND NATURAL RESOURCES, DEPARTMENT OF LAND AND
NATURAL RESOURCES, DAWN N.S. CHANG in her official
capacity as Chairperson of the Board of Land and
Natural Resources,[1] ALEXANDER AND BALDWIN, INC.,
EAST MAUI IRRIGATION COMPANY, LLC, COUNTY OF MAUI,
MAHI PONO, LLC and MAHI PONO HOLDINGS, LLC,
Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO.  1CC191000019)

MEMORANDUM OPINION
(By:  Nakasone, Chief Judge, Leonard and Hiraoka, JJ.)

This appeal arises out of a 2020 bench trial on
Plaintiff-Appellant Sierra Club's claims that Defendant-Appellee

---

[1]     Pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), Dawn N.S. Chang, in her official capacity as Chairperson of the Board of Land and Natural Resources, is automatically substituted as Defendant-Appellee herein in place of Suzanne Case.

Board of Land and Natural Resources (**BLNR**) breached its public trust duties in Count 2 and violated its Hawaii Revised Statutes (**HRS**) Chapter 205A obligations in Count 3, by approving the continuation of 2019 and 2020 annual permits (**Permits**) allowing Defendants-Appellees Alexander & Baldwin, Inc. (**A&B**) and East Maui Irrigation Company, LLC (**EMI**) (collectively, **A&B/EMI**) to divert water from East Maui streams.

We hold that, because the claims in Counts 2 and 3 expressly and substantively challenged BLNR's decisionmaking on the Permits, BLNR had exclusive original jurisdiction over the claims; and Sierra Club was required to exhaust all corrective procedures provided in BLNR's administrative process, including an administrative appeal under HRS § 91-14.  See Maui Lani Neighbors, Inc. v. State (**Maui Lani**), 156 Hawaiʻi 520, 533, 542, 575 P.3d 610, 623, 632 (2025) (holding that the circuit court lacked jurisdiction to hear claims that challenged the substance of the commission's approval of a county special use permit, where plaintiff failed to exhaust the administrative remedies available to it under HRS § 91-14).[2]  Alternative vehicles for judicial review -- such as HRS § 632-1 declaratory relief, a direct action for breach of trust under state constitutional public trust provisions, or an original action for a Coastal Zone Management Act (**CZMA**) violation under HRS § 205A-6 -- were not available under the circumstances of this case, and the Environmental Court of the First Circuit (**Environmental Court**)[3] thus lacked jurisdiction over the claims.  See id.  Accordingly, we vacate and remand for entry of an order of dismissal.

---

[2]     After the September 12, 2025 Maui Lani decision, we issued a September 29, 2025 order requesting supplemental briefing on its impact, and the parties filed their supplemental briefs on October 13, 2025.

[3]     The Honorable Jeffrey P. Crabtree presided.

## I. BACKGROUND

Sierra Club appeals from the (1) January 11, 2022 "Amended Findings of Fact and Conclusions of Law" (**FOFs/COLs**); and (2) February 16, 2022 "Final Judgment," both filed and entered by the Environmental Court. On appeal, Sierra Club challenges the Environmental Court's trial rulings that BLNR did not breach its public trust duties or violate its HRS Chapter 205A obligations in its decisionmaking on the 2019 and 2020 Permits. In the supplemental briefs regarding the impact of Maui Lani on this case, A&B/EMI and BLNR contend that Maui Lani applies to preclude judicial review outside of the administrative remedy of an HRS Chapter 91 appeal; and Sierra Club and the County of Maui (**County**) contend the opposite, that Maui Lani is distinguishable with no application here. A&B/EMI asserts that "[t]his case falls squarely within the precedent set by *Maui Lani*" and therefore "should be dismissed."

### 2018 Decision on the 2019 Permits

On November 9, 2018, BLNR held a public meeting on the continuation of the Permits for 2019. Sierra Club provided written and oral testimony and requested a contested case hearing "[i]f the conditions . . . and the due diligence" Sierra Club suggested were not implemented. BLNR approved the continuation of the Permits for 2019 (**2018 Decision**). On November 19, 2018, Sierra Club filed a petition with BLNR requesting a contested case hearing (**2018 Petition**), to address whether BLNR "is fulfilling [its] duty under the constitutional public trust and state law to protect public trust resources"; whether A&B/EMI "failed to provide sufficient information to the BLNR"; and whether A&B/EMI's proposal violated HRS Chapter 205A. The 2018 Petition was denied at a December 7, 2018 meeting. The record reflects that Sierra Club did not file an HRS § 91-14

appeal from BLNR's 2018 Decision or BLNR's denial of Sierra Club's 2018 Petition.

### 2019 Decision on the 2020 Permits

On October 11, 2019, BLNR held a public meeting on the continuation of the Permits for 2020. Sierra Club provided written and oral testimony and requested a contested case hearing. BLNR approved the continuation of the Permits for 2020 (**2019 Decision**) and denied the request for a contested case hearing. On October 17, 2019, Sierra Club filed a written petition requesting a contested case hearing (**2019 Petition**), to address whether BLNR "is fulfilling [its] duty under the constitutional public trust and state law to protect public trust resources." The 2019 Petition similarly argued, inter alia, that A&B/EMI "failed to provide sufficient information to the BLNR," and A&B/EMI's proposal violated HRS Chapter 205A. The record contains no disposition of the 2019 Petition. The record reflects that Sierra Club did not file an HRS § 91-14 appeal from BLNR's 2019 Decision, or BLNR's denial of Sierra Club's oral request for a contested case hearing.

### Current proceedings

Approximately two months after the November 9, 2018 BLNR meeting and 2018 Decision, Sierra Club filed the original January 7, 2019 Complaint in this case. Approximately two months after the October 11, 2019 BLNR meeting and 2019 Decision, Sierra Club filed its December 6, 2019 First Amended Complaint (**FAC**) against, inter alia, BLNR, A&B/EMI, and the County, adding allegations regarding the 2020 Permits. The FAC included the breach of trust claim in Count 2, entitled "(BLNR, DLNR and Chair Case Breached Their Trust Duties)"; and the HRS Chapter 205A violation in Count 3, entitled "(BLNR, DLNR and

4

Chair Case Violated Their HRS Chapter 205A Obligations)."[4] Counts 2 and 3 were premised on factual allegations of flaws and deficiencies in BLNR's decisionmaking at the 2018 and 2019 public meetings on the 2019 and 2020 Permits. The FAC alleged the Environmental Court's jurisdiction under, inter alia, HRS §§ 205A-6 and 632-1, and Article XI §§ 1, 7, 9, and Article XII § 4 of the Hawaiʻi Constitution.[5] The FAC's prayer for relief requested the Environmental Court to "[d]eclare that BLNR, DLNR and Chair Case breached their public trust duties"; "[d]eclare that BLNR, DLNR and Chair Case violated their HRS chapter 205A obligations"; and "[d]eclare invalid the BLNR's November 2018 and October 2019 decisions approving the holdover of [the 2019 and 2020] Permits." Sierra Club also prayed for prospective injunctive relief that the court "enjoin [A&B/EMI] from taking more than 25.75 million gallons of water on any day from East Maui" until, inter alia, "the proper issuance of a permit, license or lease from the BLNR"; and "[o]rder BLNR, DLNR and Chair Case to fulfill their public trust duties."

---

[4] Count 1 was dismissed and is not relevant to this appeal.

[5] HRS § 205A-6 (2017) provides for a civil cause of action by "any person or agency" for noncompliance with the CZMA. Subsection (c) provides that the court "in any action brought under this section, shall have jurisdiction to provide any relief as may be appropriate[.]" Relevant here, HRS § 205A-6(e) provides: "Nothing in this section shall restrict any right that any person may have to assert any other claim or bring any other action."

HRS § 632-1 (2016), the declaratory judgment statute, provides for relief in civil cases. Relevant here, subsection (b) contains a limitation on the availability of declaratory relief, and states: "Where . . . a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed . . . ."

Article XI §§ 1, 7 and Article XII § 4 of the Hawaiʻi Constitution set forth the duties of the State under the public trust doctrine for natural resources, water, and public lands, respectively. Article XI § 9 of the Hawaiʻi Constitution sets forth a person's "right to a clean and healthful environment[.]"

At trial, Sierra Club argued that BLNR breached its public trust duties when it approved the Permits for 2019 and 2020, allowed A&B/EMI to drain all of the water from the 13 East Maui streams covered by the Permits, and did not impose conditions to protect native aquatic species or address the harmful diversion structures. Sierra Club argued that BLNR "failed to scrutinize" A&B/EMI's request to continue the Permits for 2019 and 2020 by not properly considering A&B/EMI's actual needs for the water and their access to alternative resources, and without balancing the reasonable and beneficial use of the water against the harm being caused. Sierra Club presented an expert witness in Hawaiian Stream Ecology to testify about stream health and the diversion structures. Sierra Club presented witnesses who testified about the state of the streams, the diversion structures, the 2018 and 2019 BLNR meetings, and the evidence presented before BLNR at those meetings.

After the conclusion of the trial, the Environmental Court filed its January 11, 2022 FOFs/COLs ruling against the Sierra Club in Counts 2 and 3, and Sierra Club timely appealed.

## II. STANDARD OF REVIEW

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." Maui Lani, 156 Hawai`i at 532, 575 P.3d at 622 (citation omitted). The lack of subject matter jurisdiction may be raised at any time. Chun v. Emps.' Ret. Sys. of State of Haw., 73 Haw. 9, 13, 828 P.2d 260, 263 (1992).

6

### III. DISCUSSION

A.   **HRS § 632-1 declaratory relief was not available where BLNR had exclusive original jurisdiction over Counts 2 and 3, and Sierra Club was required to exhaust all corrective procedures in the administrative process, including an appeal under HRS § 91-14.**

In Maui Lani, the county planning commission approved the permit at issue after a public hearing, at which future members and officers of Maui Lani Neighbors, Inc. (**MLN**) testified. 156 Hawaiʻi at 526, 575 P.3d at 616. None of the members or officers of MLN petitioned to intervene or maintained an HRS § 91-14 appeal of the agency's decision to approve the permit. Id. MLN later filed a circuit court complaint against the commission alleging, inter alia, violations of zoning, Hawaiʻi Constitution provisions, and due process, and requesting declaratory relief that the permit was void as a matter of law. Id. at 526-27, 575 P.3d at 616-17. Noting that the county's application procedures expressly provided rights to intervene and for judicial review pursuant to HRS § 91-14, the Hawaiʻi Supreme Court held that the circuit court lacked jurisdiction to hear the claims because MLN did not exhaust its administrative remedies, where none of MLN's members and officers petitioned to intervene or maintained an HRS § 91-14 appeal of the commission's approval of the permit. Id. at 534-35, 575 P.3d at 624-25. The supreme court reasoned that MLN's claims challenged the "substance" of the commission's decision to issue the permit, which could have been properly addressed in an HRS § 91-14 appeal, and a "belated post-decision civil action for declaratory relief is not a replacement for participation in a hearing" before the agency. Id. at 539, 542, 575 P.3d at 629, 632 (citation omitted).

Maui Lani applied the "doctrine of exhaustion of administrative remedies" (**exhaustion doctrine**) "where a claim is

cognizable in the first instance by an administrative agency alone." Id. at 533, 575 P.3d at 623 (citation omitted). Where an agency has such "exclusive original jurisdiction over a claim, 'judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process.'" Id. (citation omitted). In order for the exhaustion doctrine to apply, "the statute, ordinance or regulation under which the agency exercises its power must establish clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." Id. (citation modified).

> **1. BLNR had original exclusive jurisdiction over the claims in Counts 2 and 3, which expressly and substantively challenged BLNR's decisionmaking on the Permits.**

In Maui Lani, the supreme court held that where the "adjudication of MLN's [zoning] claims first required a decision" by the agency as to whether the proposed use violated zoning ordinances or met the criteria for a permit, and the decision granting the permit was made through the agency's "procedures prescribed by ordinance and the [commission] Rules," "the appropriate means to review the [commission]'s decision was through a chapter 91 appeal." Id. at 537, 575 P.3d at 627. The court reaffirmed the rationale of a prior precedent, Kona Old Hawaiian Trails Group By and Through Serrano v. Lyman (**Kona Old**), 69 Haw. 81, 83-84, 93, 734 P.2d 161, 163, 169 (1987), which held that regulatory "uniformity and consistency" is secured through initial review by agencies "that are better equipped than courts by specialization." Id. (brackets omitted). The Maui Lani court reasoned that "[h]ere, allowing MLN to challenge the substance of the [commission]'s decision through an original action independent from an administrative

proceeding under HRS § 91-14 would be counter to the uniform and consistent regulation of land use contemplated" by county zoning ordinances and HRS § 46-4, which vested zoning powers in the counties.  Id. (citation omitted).  The court applied this same reasoning to preclude the plaintiff's constitutional claims, which were in the nature of HRS § 632-1 declaratory relief based on their "substance" and sought the same relief as the zoning claims.  Id. at 541, 575 P.3d at 631.  These constitutional declaratory relief claims were likewise precluded because MLN "had opportunity to raise those claims through the [permit] process and on appeal pursuant to HRS § 91-14."  Id.

Here, HRS § 171-55 (2011) conferred upon BLNR the statutory authority to "issue permits for the temporary occupancy of state lands."  Sierra Club participated in the administrative process before BLNR by presenting opposition testimony at the 2018 and 2019 public meetings on the Permits pursuant to Hawaii Administrative Rules (**HAR**) § 13-1-11.1 (governing testimony at public meetings), and Sierra Club followed the procedure set forth in HAR § 13-1-29 to timely request a contested case hearing on both the 2019 and 2020 Permits.  At the BLNR public meetings and within Sierra Club's 2018 and 2019 requests for a contested case hearing, Sierra Club argued that BLNR's decisionmaking on the Permits breached constitutional public trust duties and violated the CZMA under HRS Chapter 205A.  In Counts 2 and 3 of Sierra Club's subsequently filed FAC, Sierra Club raised the same claims it previously raised in the BLNR public meetings.  Counts 2 and 3 thus expressly and substantively challenged BLNR's decisionmaking on the Permits and sought invalidation of the Permits.  As in Maui Lani, "requiring relitigation of agency decisions is inefficient and imposes an increased burden on the State in contrast to resolving the challenge in the initial

decision-making process." Id. at 542, 575 P.3d at 632 (citation omitted). These concerns are evident here, where BLNR's 2018 and 2019 Decisions were litigated in a lengthy trial that lasted nearly a month. Allowing Sierra Club to challenge BLNR's Permit decisions in a subsequent trial rather than through an HRS § 91-14 appeal runs "counter to the uniform and consistent regulation" by BLNR of HRS § 171-55 permits. Id. at 537, 575 P.3d at 627. We conclude the claims in Count 2 and 3 were cognizable in the first instance by the administrative agency, BLNR, alone; BLNR had "exclusive original jurisdiction" over them; and BLNR's administrative process applied to their resolution. See id. at 533, 575 P.3d at 623.

2. **Sierra Club was required to exhaust _all_ of the corrective procedures provided for in the administrative process, including an HRS § 91-14 appeal.**

Sierra Club argues that Maui Lani has no application here because it "asked for a contested case[,]" which was denied, and there "[we]re no statutes or rules that provide for any agency to review BLNR's decision." The County similarly argues that there was "no immediate mechanism to appeal under HRS § 91-14" from the denial of the contested case hearing.

A&B/EMI argues that Sierra Club failed to appeal the 2018 and 2019 Decisions and the denial of the contested case hearing requests under HRS § 91-14; and that the relief sought is "duplicative of the relief that would have been available . . . through the administrative process." BLNR similarly argues that Sierra Club "had available administrative remedies" through "the administrative process and subsequent HRS § 91-14 appeal."

In this case, because BLNR had exclusive jurisdiction over Sierra Club's claims in Counts 2 and 3, Sierra Club was

10

required to exhaust "all the corrective procedures provided for in the administrative process." Id. at 533, 575 P.3d at 623 (emphasis added) (citation omitted). Sierra Club partially used the administrative process to litigate its claims before BLNR, but did not exhaust "all the corrective procedures" available in that process, because it did not pursue an HRS § 91-14 appeal. Id. The parties disagree on whether the corrective procedure of an HRS § 91-14 appeal was available to Sierra Club, where its requests for a contested case hearing request were denied.

In a separate case, the supreme court recently held that BLNR's denial of Sierra Club's request for a contested case hearing regarding continuation of A&B/EMI's Permits for 2021, and BLNR's subsequent decision to renew those Permits, "were a final decision and order from which Sierra Club had the right to appeal." Sierra Club v. Bd. of Land & Nat. Res., 156 Hawai‘i 382, 399, 575 P.3d 472, 489 (2025) (citation omitted). Here, we also conclude an HRS § 91-14 appeal was available as part of the corrective procedures in BLNR's administrative process.

Because Sierra Club did not pursue its administrative remedy under HRS § 91-14, it did not exhaust "all the corrective procedures" required under the exhaustion doctrine. See Maui Lani, 156 Hawai‘i at 533, 575 P.3d at 623.

> **3. Declaratory relief under HRS § 632-1 is precluded because HRS § 91-14 provided a special form of remedy.**

The declaratory relief statute, HRS § 632-1, contains a limiting provision, which states: "where a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed." Id. at 538, 575 P.3d at 628 (citation modified) (quoting HRS § 632-1(b)). The Maui Lani court explained that:

11

> This court has interpreted this limitation as a bar to jurisdiction. Punohu [v. Sunn], 66 Haw. [485,] 487, 666 P.2d [1133,] 1134 [(1983)] (citing Traveler's Ins. Co. v. Haw. Roofing, Inc., 64 Haw. 380, 641 P.2d 1333 (1982)) ("We have held that where such a statutory remedy exists, declaratory judgment does not lie."). More, this court has held that "the remedy of appeal" of a contested case proceeding provided by HRS § 91-14, "is a statutorily provided special form of remedy" such "that a declaratory judgment action, pursuant to § 632-1, HRS, did not lie." Id. at 487, 666 P.2d at 1135.

Id. at 538, 575 P.3d at 628. "HRS § 632-1 bars a declaratory action where an administrative appeal is available because . . . 'it would be anomalous to permit a declaratory judgment action to be submitted for an appeal from an agency determination in a contested case.'" Id. at 542, 575 P.3d at 632 (quoting Punohu, 66 Haw. at 487, 666 P.2d at 1135). Holding that "HRS § 91-14 is a special form of statutory remedy that precludes a declaratory action[,]" the Maui Lani court held that HRS § 632-1 precluded declaratory relief on MLN's zoning and constitutional claims where MLN "had opportunity to raise those claims through the [administrative] process and on appeal pursuant to HRS § 91-14." Id. at 538-41, 575 P.3d at 628-31 (citation omitted).

Here, Sierra Club's claims in Counts 2 and 3 challenged the decisionmaking on the Permits, and BLNR's administrative process, including an HRS § 91-14 appeal, applied to the resolution of those claims. Because Sierra Club had a special statutory remedy under HRS § 91-14, and Sierra Club had opportunity to raise those claims through BLNR's administrative process, Sierra Club is "thus precluded from bringing them in an original action" under HRS § 632-1. See id. at 541, 575 P.3d at 631.

     B.    **While a breach of trust claim may be brought by direct action, under the circumstances of this case, Count 2 was subject to BLNR's administrative process, including an HRS § 91-14 appeal.**

       Sierra Club argues the breach of trust claim in Count 2 is "originally cognizable in court, and is not dependent on HRS § 632-1[,]" and is "based both on the common law (breach of trust) as well as a violation of constitutional duties." Sierra Club argues that its public trust claim relied on Hawaiʻi's constitutional breach of trust provisions, for which prosecution via direct action has been recognized in precedent, such as Ching v. Case, 145 Hawaiʻi 148, 154, 449 P.3d 1146, 1152 (2019) (involving a direct action for breach of public trust against the State for failure to "take all necessary steps to ensure compliance with the terms of [a] lease"); Kelly v. 1250 Oceanside Partners, 111 Hawaiʻi 205, 211-13, 140 P.3d 985, 991-93 (2006) (involving a direct action for breach of the public trust against the department of health for failure to prevent a developer from violating water quality standards relating to coastal waters); Pele Defense Fund v. Paty, 73 Haw. 578, 601, 837 P.2d 1247, 1262 (1992) (recognizing a "right to bring suit under the Hawaii Constitution to prospectively enjoin the State from violating the terms of the ceded lands trust"); Frankel v. Bd. of Land & Nat. Res., 155 Hawaiʻi 358, 364, 564 P.3d 1157, 1163 (App. 2025) (involving a direct action for breach of public trust against BLNR for approving a revocable permit to a resort that encroached on a portion of ceded public trust land consisting of beach and swimming area), cert. rejected, SCWC-20-0000603, 2025 WL 1713026 (Haw. June 19, 2025); Hall v. Dep't of Land & Nat. Res., 128 Hawaiʻi 455, 473, 290 P.3d 525, 543 (App. 2012) (affirming the grant of summary judgment against plaintiff's claim for breach of trust, where the plaintiff did

not "cite any authority which support[ed] the application of the public trust doctrine" to the instant case).

We conclude that the above cases upon which Sierra Club relies do not have persuasive application here, based on the nature of the claim in Count 2 challenging BLNR's decisionmaking on the Permits, and where the HRS § 91-14 administrative process was available to Sierra Club. Ching and Kelly are distinguishable because the agency's decisionmaking had concluded and the administrative process was not available to the plaintiffs in those cases; and both plaintiffs challenged the enforcement, or lack of enforcement, of the agency's decision, rather than the agency's decisionmaking itself. See Ching, 145 Hawai'i at 154, 449 P.3d at 1152; Kelly, 111 Hawai'i at 211-13, 140 P.3d at 991-93. Hall affirmed the dismissal of the breach of public trust claim and has no persuasive value. 128 Hawai'i at 473, 290 P.3d at 543. We agree that the procedural posture of the public trust claim in Frankel is similar to this case, where the administrative process was available and utilized, but no HRS § 91-14 appeal was filed. 155 Hawai'i at 364, 564 P.3d at 1163. The Frankel plaintiffs' public trust claims similarly challenged the agency's decisionmaking, but did so through the vehicle of a direct action. Id. at 364-65, 564 P.3d at 1163-64. However, the applicability of the exhaustion doctrine and whether the Environmental Court properly exercised jurisdiction over the breach of trust claims were not litigated by the parties or determined by this court in Frankel. This court decided Frankel in January 2025 -- before the Hawai'i Supreme Court's September 2025 Maui Lani decision that is binding upon this court.

We do not hold that a breach of trust claim may never be brought in a direct action. Rather, our holding is limited

14

to the circumstances in this case.  Here, Count 2 challenged BLNR's decisionmaking on the Permits and was subject to BLNR's administrative process that included an HRS § 91-14 appeal.

    C.    **Because Count 3 was subject to BLNR's administrative process, including an HRS § 91-14 appeal, the alternative remedy of an original action under HRS § 205A-6 was not available.**

Sierra Club argues that HRS § 205A-6 "allows for parties to challenge agency actions directly through the court system."  In Maui Lani, the supreme court likewise noted "HRS § 205A-6 provides for an original action in court."  156 Hawaiʻi at 539, 575 P.3d at 629.  Sierra Club's argument is not supported by Hawaiʻi precedent that has applied the exhaustion doctrine to HRS Chapter 205A claims for which an administrative process was available.

In Kona Old, the Hawaiʻi Supreme Court affirmed the dismissal of a plaintiff organization's challenge to the county planning director's issuance of a permit on grounds that it violated the CZMA.  69 Haw. at 83-84, 734 P.2d at 163.  The plaintiff contended that it had a right to judicial review under both HRS § 91-14 and HRS § 205A-6.  Id. at 89, 734 P.2d at 166-67.  The Kona Old court concluded that because the plaintiff "did not avail itself" of the "opportunity for an agency hearing" under HRS § 91-14, that avenue of relief was not available to it.  Id. at 92, 734 P.2d at 168.  The court then addressed HRS § 205A-6 and explained that the statute "affords an interested party an alternative remedy for an agency's noncompliance with the CZMA by authorizing a civil action in which a circuit court" has jurisdiction to provide "any relief as may be appropriate."  Id. at 93, 734 P.2d at 169 (emphasis added) (quoting HRS § 205A-6(c)).  While the Kona Old court acknowledged that HRS § 205A-6 created a cause of action

15

"seemingly . . . originally cognizable in the courts[,]" because the plaintiff's claim "involve[d] the issuance" of a permit, and the permit's "enforcement" required the resolution of issues placed within the agency's "special competence" "under the regulatory scheme," the court held that the agency "regulating the subject matter should not be passed over."  Id. (citations and brackets omitted).  The Kona Old court concluded that judicial review under HRS § 205A-6 was not available where the plaintiff had not exhausted the HRS § 91-14 administrative process available to it, stating as follows:

> Exhaustion comes into play "where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course."  The exhaustion principle asks simply that the avenues of relief nearest and simplest should be pursued first.  Judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process.  Under this principle, Kona Old clearly had no right to seek judicial review.

Id. (citation modified).  The Maui Lani court similarly rejected MLN's assertion that HRS § 46-4 provided for an original action for MLN's zoning claims, holding that "the right of action created under that statute [(HRS § 46-4)] is meant to supplement the counties' enforcement authority and not to authorize a collateral attack on an agency decision outside of the administrative appeals process."  156 Hawaiʻi at 537, 575 P.3d at 627 (emphases added).

Here, HRS § 205A-6 is an "alternative remedy" for a CZMA violation and may not be used to "authorize a collateral attack on an agency decision outside of the administrative process."  See id.; Kona Old, 69 Haw. at 93, 734 P.2d at 169.  Because Count 3 challenged BLNR's decisionmaking on the Permits, it was originally cognizable before BLNR and subject to exhaustion of "all the corrective procedures provided for in

16

[BLNR's] administrative process" including an HRS § 91-14 appeal.  See Kona Old, 69 Haw. at 93, 734 P.2d at 169 (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, we vacate the Environmental Court's January 11, 2022 FOFs/COLs and February 16, 2022 Final Judgment, and remand for entry of an order dismissing the action for lack of jurisdiction.

DATED:  Honolulu, Hawaiʻi, November 18, 2025.

On the briefs:

David Kimo Frankel,
for Plaintiff-Appellant.

Daniel A. Morris,
Miranda C. Steed,
Deputy Attorneys General,
for Defendants-Appellees,
Board of Land and Natural
Resources, Department of Land
and Natural Resources, and
Dawn N.S. Chang in her
official capacity as
Chairperson of the Board of
Land and Natural Resources.

Mallory T. Martin,
Trisha H.S.T. Akagi,
for Defendants-Appellees,
Alexander and Baldwin, Inc.,
and East Maui Irrigation
Company, LLC.

Caleb P. Rowe,
Mariana Lowy-Gerstmar,
Deputy Corporation Counsels,
for Defendant-Appellee,
County of Maui.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge